UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS YPHANTIDES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CONTY OF SAN DIEGO, a Public Entity, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:   21cv1575-GPC(BLM)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION NOS. 51-56; AND DENYING PLAINTIFF'S MOTION REQUESTING DEFENDANT AMEND OR SUPPLEMENT PRIVILEGE LOG**<br><br>**[ECF No. 30 & 35]** |

Currently before the Court are Plaintiff's July 11, 2022 Motion to Compel Defendant County of San Diego's Responses to Requests for Production of Documents, Set Three, Nos. 51-56 [ECF No. 30 ("MTC")], Defendant's July 18, 2022 Opposition to Plaintiff's motion [ECF No. 31 ("MTC Oppo.")], Plaintiff's July 29, 2022 Letter Brief Requesting Defendant Amend or Supplement its Privilege Log ("Letter Brief"), and Defendant's August 5, 2022, Letter Brief Opposing Plaintiff's Request ("Letter Oppo").  For the reasons set forth below, Plaintiff's motion to compel Defendant's further responses to requests for production of documents and Plaintiff's motion requesting Defendant amend or supplement its privilege log are **DENIED**.

## **FACTUAL BACKGROUND**

This instant matter was initiated on September 8, 2021, when Plaintiff filed a complaint asserting eleven causes of action against Defendant.  ECF No. 1.  Plaintiff alleges Defendant unlawfully terminated him from his position as Chief Medical Officer of the County.  Id.  Included in Plaintiff's complaint are causes of action for discrimination, retaliation, and wrongful termination.  Id.

On October 1, 2021, Defendant filed its answer, which included thirteen affirmative defenses.  ECF No. 4.  Defendant sought leave to amend its answer on May 6, 2022.  ECF No. 22.  That same day, the district judge granted Defendant's application for leave to file an amended answer and required Defendant to file an amended answer no later than May 13, 2022.  ECF No. 24.  On May 12, 2022, Defendant filed an amended answer that included sixteen affirmative defenses, one of which asserts Defendant "learned of facts and circumstances, after the date of termination of Plaintiff's employment, which, if known on or prior to that date, would have resulted in Plaintiff's termination."  ECF No. 27.

## DISCOVERY BACKGROUND

On April 15, 2022, Plaintiff served his third set of Requests for Production of Documents ("RFPs"), which includes RFP Nos. 51 through 56 at issue here.  MTC at 4; Declaration of Greg A. Klawitter ("Klawitter Decl."), ECF No. 30-1 at 3.  Through the six requests for production, Plaintiff seeks "all emails sent, forwarded, cc'd and or bcc'd by [Nick Macchione, Dean Arabatzis, Andy Pease, Eric Mcdonald, Helen Robbins-Meyer,[1] and Nathan Fletcher] from [their] County email[s] to any third-party non-County employed individuals, between March 2020 and March 2021."  ECF No. 30-1 at 38-44.  Defendant served its responses and objections on June 3, 2022.  Id.; MTC Oppo. at 4; Declaration of Corrie J. Klekowski ("Klekowski Decl."), ECF No. 32-1 at 2.  Defendant objected on the same grounds to each of the six requests:

> Defendant incorporates herein its Preliminary Statement, General Objections, and objection to the "Definitions" and "Instructions" in Plaintiff's Request.  Defendant

---

[1] Request for Production No. 55, related to Helen Robbins-Meyer, only requests emails "to any non-County employees."  It does not specify "third-party" like the other five requests.  ECF No. 30-1 at 13.

further objects to this Request on the grounds that it: (1) seeks documents and information that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) is overly broad and unduly burdensome and is not commensurate with legitimate discovery needs.  Defendant objects that this Request, as framed, is not proportional to the needs of the case, taking into account this Request's lack of limitation to the issues in this case, the lack of any limitation on the subject matter, and the immense resources and burden imposed on Defendant in responding to this Request (given that it seeks every outgoing email – including work and non-work related email – for a one year period to any non-employee, third party regarding any subject).  This burden and expense on Defendant would far outweigh any likely benefit of such discovery; (3) is not reasonably limited in time or scope, as this Request fails to identify a relevant category of documents, the subject matter to which such communications relate, or the third party custodian/recipient of such communications; (4) as framed, seeks information and documents protected by the attorney-client privilege and/or work product doctrine; (5) is duplicative of prior Requests propounded by Plaintiff in this litigation including (by way of example and without limitation) Request No. 32; and (6) seeks confidential and private information of people not parties to this action, the disclosure of which would violate their rights to privacy as established and protected by Article I, Section I of the California Constitution.

Id.

On June 9, 2022, at Plaintiff's request, the parties met and conferred over videoconference for approximately thirty minutes. Klawitter Decl. at 3; Klekowski Decl. at 3.  At that time, Defendant did not agree to supplement its responses, but Plaintiff agreed to offer search terms to narrow the scope and subject matter of the requests significantly.  Klawitter Decl. at 3; Klekowski Decl. at 4.  Sometime between the videoconference on June 9, 2022, and June 16, 2022, Plaintiff proposed the following changes in scope to RFPs 51 through 56: (1) timeframe of March 2020 through March 2021 to January 2020 through March 2021; (2) limiting the requests to emails "forwarded" by the identified individuals; and (3) identifying the recipient as any non-County email address.  MTC at 6; Klekowski Decl. at 4-5.  On June 16, 2022, Defendants informed Plaintiff that the noted changes did not limit the subject matter, recipients, or search terms.  Klekowski Decl. at 5.

On  July 1, 2022, the parties filed a joint motion to extend the motion to compel deadline.  ECF No. 28.  The Court granted the parties' request, and in accordance with the Court's order,

1   the parties timely filed their motion and opposition.  <u>See</u> MTC & MTC Oppo.

2        As part of the same discovery set, Plaintiff requested documents that support Defendant's

3   after-acquired evidence defense.  Letter Brief at 2.  Defendants produced seventy-five to eighty

4   documents in response, including six email strings that contained redactions.  <u>Id.</u>  Initially,

5   Defendant claimed privilege and did not provide a privilege log.  <u>Id.</u>  Counsel for the parties met

6   and conferred, and Defendant agreed to serve a privilege log.  <u>Id.</u>  On July 11, 2022, Defendant

7   served its privilege log.  <u>Id.</u> at 34-36.  Following service of the privilege log, counsel for both

8   parties had additional meet and confer efforts, as Plaintiff believed that Defendant needed to

9   provide a more-detailed privilege log.  <u>Id.</u>  Defendant denied Plaintiff's request to amend its

10   privilege log.  <u>Id.</u> at 3; Letter Oppo at 7.

11        On July 22, 2022, the parties jointly contacted the Court regarding an additional discovery

12   dispute, and on July 25, 2022, the Court set a briefing schedule for the parties' second dispute.

13   <u>See</u> ECF No. 34.  The parties then timely filed their letter briefs.  <u>See</u> Letter Brief & Letter Oppo.

14        **<u>LEGAL STANDARD</u>**

15        The scope of discovery under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") is defined

16   as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

23 Fed. R. Civ. P. 26(b)(1).  Typically, the relevance standard is broad in scope and "encompass[es]

24 any matter that bears on, or that reasonably could lead to other matters that could bear on, any

25 issue that is or may be in a case."  <u>Doherty v. Comenity Capital Bank</u>, No. 16cv1321-H-BGS,

26 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017).  Relevance, however, is not without limits.

27 <u>Id.</u>  The 2015 amendment to Rule 26(b) removed the phrase "reasonably calculated to lead to

28 the discovery of admissible evidence" because it was often misconstrued to define the scope of

discovery.  Fed. R. Civ. P. 26(b)(1) advisory committee's notes (2015 amendment).  Instead, to fall within the scope of discovery, the information must also be "proportional to the needs of the case," requiring lawyers to "size and shape their discovery requests to the requisites of a case" while "eliminat[ing] unnecessary or wasteful discovery."   Fed. Civ. R. P. 26(b)(1); Cancino Castellar v. McAleenan, No. 17cv941-BAS-AHG, 2020 WL 133485, at *4 (S.D. Cal Mar. 23, 2020) (quoting Roberts v. Clark Cty. Sch. Dist., 312 F.R.D. 594, 603 (D. Nev. 2016)).

District courts have broad discretion to determine relevancy for discovery purposes.  D.M. v. County of Merced, No. 20cv409-JLT-SAB, 2022 WL 229865, at * 2 (E.D. Cal. Jan. 26, 2022) (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) and Surfvivor Media v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005)).  District courts also have broad discretion to limit discovery to prevent its abuse.  See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)"). Further, "[w]hen analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Cancino, 2020 WL 1332485, at *4 (citing Fed. R. Civ. P. 26(b)(1)).

Federal Rule of Civil Procedure 34 provides that a party may serve on another request for production of documents, electronically stored information, or tangible things within the scope of Federal Rule of Civil Procedure 26(b).  Fed. R. Civ. P. 34(a).  Where a party fails to produce documents requested under Rule 34, the party propounding the request for production of documents may move to compel discovery.  See Fed. R. Civ. P. 37(a).  "The party seeking to compel discovery has the burden of establishing that its requests satisfy the relevancy requirements of Rule 26(b)(1).  Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining, or

supporting its objections." Williams v. County of San Diego, No. 17cv815-MMA(JLB), 2019 WL 2330227, at *3 (citing Bryant v. Ochoa, No. 7cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal quotations omitted).

## DISCUSSION

### I.    RFP Numbers 51-56

Plaintiff seeks an order from the Court compelling Defendant "to substantively respond to and produce documents responsive" to RFPs Nos. 51-56.  MTC at 11-12.  Defendant opposes Plaintiff's motion and seeks $10,000.00 in sanctions.  MTC Oppo. at 2, 13.  The crux of the parties' dispute is the scope of discovery in this matter, and, specifically, whether Plaintiff is entitled to the requested emails of the six comparators he outlined.  See generally, MTC.

"[T]he allegations in a complaint generally dictate what evidence is discoverable." Trabulsi v. Wells Fargo Bank, Nat'l Ass'n, Case No. 8:17-cv-2088-JLS-SK, 2018 WL 6444892, at *1 (C.D. Cal., Aug. 21, 2018) (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."); United States ex rel. Jacobs v. CDS, P.A., 2016 WL 4146077, at *2 (D. Idaho Aug. 3, 2016) ("The allegations of the complaint logically shape the scope of discovery.")).  However, "the scope of permissible discovery is not based solely on whether a transaction is expressly mentioned in the complaint. The proper inquiry instead is whether the information sought is relevant to the parties' claims and defenses and proportional to the needs of the case." Trabulsi, 2018 WL 6444892, at *1 (citing Fed. R. Civ. P. 26(b)).  "A party claiming that a request is important to resolve the issue should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Id.; see also Gilead Sciences, Inc. v. Merck & Co, Inc., Case No. 5:13cv4057-BLF, 2016 WL 146574, at *1 (N.D. Cal., Jan. 13, 2016) ("A party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case.").  Determining proportionality requires the court to "us[e] all the information provided by the parties" to reach a "case-specific determination of the appropriate scope of discovery." Id.

**A.  Relevance and Proportionality**

Plaintiff argues that the requested documents are relevant "comparator evidence" necessary to rebut Defendant's contention and after-acquired evidence affirmative defense that Plaintiff "allegedly engaged in willful and terminable violations of the County's email usage protocols."[2]  MTC at 11.  Specifically, Plaintiff argues that he is "entitled to test the 'legitimacy' of the County's claim, and/or whether it is pretext or otherwise not credible grounds for termination." Id. at 7-8.  According to Plaintiff, the named individuals were carefully selected because they are "similarly situated County 'leaders,'" and Plaintiff expects that these individuals also sent or forwarded emails without consequence.  Id. at 8-9. Conversely, Defendant asserts that Plaintiff's requests do not seek relevant evidence and are not proportional to his claims, as improper email usage was not one of the grounds for Plaintiff's termination.  MTC Oppo. at 7. Defendant further argues that its "after acquired evidence defense is wholly independent from the inquiry into whether the County discharged Plaintiff in a discriminatory and/or retaliatory manner." Id. at 8.  Defendant concludes the emails of the alleged comparators "ha[ve] no bearing on the issues at stake in this action."[3] Id. at 7, 9.

Plaintiff relies on Lauer v. Longevity Medical Clinic, PLLC, No. C13-0860-JCC, 2014 WL 5471983 (W.D. Wash. Oct. 29, 2014), Chuang v. University of Cal. Davis, 225 F.3d 1115, 1126 (9th Cir. 2000), and Wills v. Superior Ct., 195 Cal. App. 4th 143, 172 (2011) to support his

---

[2] Plaintiff argues that "[o]ne of the County's material contentions underlying its alleged 'legitimate business reason' justifying termination of Dr. Yphantides' employment is based on Dr. Yphantides' having forwarded, cc'd, and/or bcc'd County-related emails to non-County employed individuals."  MTC at 7.  Plaintiff contends Defendant "is also relying on additional similar alleged policy violations" to support its after-acquired evidence affirmative defense.  Id.
[3] According to its responses to Special Interrogatories Set One, Defendant terminated Plaintiff "because of confluence of events over a course of time all culminating in the eventual sentiment that Plaintiff should no longer serve as the County of San Diego's Chief Medical Officer.  Among these were misconduct and failure of good behavior involving County employees and those outside the County, discourteous treatment with the County's community partners, the public and fellow employees, insubordination, acts incompatible with public service, poor judgment in the exercise of his duties and a general disagreement and dissatisfaction over Plaintiff's policies and opinions germane to his role as the Chief Medical Officer over a course of time."  ECF No. 30-1 at 8.

position that he is entitled to the requested comparator evidence to show "others not in [Plaintiff's] protected class engaged in similar conduct yet received more favorable treatment." MTC at 8.  In Lauer, the court held that under the broad definition of relevance set forth in Rule 26, the personnel files of "comparator" employees were relevant to the plaintiff's discrimination claim.  Laurer, 2014 WL 5471983, at *5.  The court in Chuang made similar findings, holding that indirect "comparator" evidence can demonstrate pretext for the employer's termination decision "by showing the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable[.]"  Chuang, 225 F.3d at 1127.  Similarly, the Wills court opined that "showing disparate treatment or policy enforcement is a permissible means to establish pretext" but the court cautioned that in order "[t]o establish pretext in this manner, [plaintiff] must identify other similarly situated employees" that were not terminated. Wills, 195 Cal. App. 4th at 172.

Plaintiff's cases are not persuasive in this dispute.  First, all of Plaintiff's cases were decided under the old Rule 26 definition in which the scope of discovery was defined as information "reasonably calculated to lead to the discovery of admissible evidence."  See Lauer, 2014 WL 5471983, at *3 (decided in 2014); Chuang, 225 F.3d 115 (decided in 2000); Wills, 195 Cal. App. 4th 143 (decided in 2011).  In 2015, the rule was amended to delete that phrase and add a proportionality requirement.  Fed. R. Civ. P. 26(b)(1).  The current law defines the scope of discovery as information that is "relevant to any party's claim or defense and proportional to the needs of the case".  Id.  Second, the cases cited by Plaintiff involve situations in which the plaintiff was seeking comparator evidence to support discrimination or retaliation claims and/or pretext in a stated discrimination decision whereas, in this case, Plaintiff is seeking comparator evidence to rebut Defendant's after acquired evidence affirmative defense.

Plaintiff seeks "all emails sent, forwarded, cc'd and or bcc'd" by six individuals for a one-year period and argues that the emails are relevant because the identified individuals may have improperly forwarded emails and may not have received any negative consequence.  Plaintiff theorizes that if the comparators engaged in the alleged improper email conduct and did not receive a negative employment sanction, the evidence would undermine Defendant's

termination decision and/or impact Defendant's affirmative defense.   Plaintiff's theory is inapplicable to Defendant's termination decision (and therefore Plaintiff's claims for discrimination, retaliation, and wrongful termination) because Defendant was unaware of Plaintiff's alleged misuse of County emails until after the termination decision.  See MTC Oppo. at 7-8 (Plaintiff's misuse of confidential information "was not relied upon to end [Plaintiff's] employment").  See also McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 359-60 (1995) ("McKennon's misconduct was not discovered until after she had been fired.  The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason.").   Rather, the comparator evidence at issue in this case will be used to address Defendant's after acquired evidence affirmative defense and Plaintiff has not provided any cases indicating that comparator evidence is relevant to that defense.[4]  As such, Plaintiff has not established that the requested evidence is "relevant to any party's claim or defense."

Plaintiff also fails to establish how the six identified "comparators" are similarly situated to Plaintiff.  While there is no rigid standard for proving someone is similarly situated and the employees are not required to have the same roles, they must be "similar 'in all material respects.'"  Hawn v. Executive Jet Mgmt., 615 F.3d 1151, 1157 (9th Cir. 2010) (quoting Moran v. Selig, 447 F.3d 748. 755 (9th Cir. 2006)).  "Materiality will depend on context and the facts of the case."  Id.  As a general matter, when individuals have similar jobs and display similar conduct, they are similarly situated.  Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).  Employees may be similarly situated if the same decision maker subjects them to the same behavioral standards and disciplinary decisions.  Hawn, 615 F.3d at 1157-59.

---

[4] The after-acquired evidence defense is an equitable doctrine that limits a plaintiff's remedies for wrongful discharge when an employer discovers that plaintiff committed an act of wrongdoing prior to being terminated and that the "wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."  McKennon, 513 U.S. at 361-62.  In essence, coming forward with after-acquired evidence is merely a way " employer[s] can avoid backpay and other remedies[.]"  O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 759, 761 (9th Cir. 1996).

21cv1575-GPC(BLM)

Here, Plaintiff only indicates that he selected these six individuals because they are county leaders and were "intimately involved in his termination." MTC at 8. Plaintiff does not assert or establish that the identified individuals have similar jobs or are governed by the same decisionmaker with the same behavior standards and disciplinary rules. Defendant counters that the comparators are not similarly situated, explaining, for example, that "those who decided to terminate Plaintiff are not the same decision makers who could take adverse action against [Helen] Robbins-Meyer or [Nathan] Fletcher." MTC Oppo. at 9 n.7; Declaration of Kimberly Evers ("Evers Decl."), ECF No. 31-14 at 2-4 (describing San Diego County's Health & Human Services Agency organization and the job title, responsibilities, and decisionmaker for adverse action for each comparator). Further, Plaintiff states that he "expects" that these individuals "sent or forwarded emails to third parties but suffered no adverse employment action as a result" [MTC at 8], but he provides no support or evidence for his expectation that all the identified individuals engaged in the same allegedly improper email conduct.[5] Plaintiff's speculation that other County leaders improperly forwarded emails without consequence does not establish that they are similarly situated to Plaintiff or that the requested evidence is relevant and proportional.

Plaintiff also has not established the proportionality of his requests. Rule 26(b)(1) instructs litigants and courts to consider the following in determining proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, as discussed above, the requested evidence is not relevant to Plaintiff's substantive claims and may not be relevant to the affirmative

---

[5] Plaintiff states that the comparators "engaged in the same and worse conduct than what [he has] been accused of allegedly doing." Declaration of Nicholas Yphantides, M.D. ("Yphantides Decl."), ECF No. 30-2 at 2. Plaintiff then details unrelated email conduct or misconduct. Id. at 2-3 (comparator Dr. McDonald communicated with Plaintiff's brother, Dr. Phil Yphantides, regarding "County health and Covid related developments" and comparator Macchione instructed employees to "double delete" emails, sent texts to Plaintiff's personal cell phone, and made derogatory statements about his boss and other employees).

21cv1575-GPC(BLM)

1  defense.  As such, the importance of the evidence and the amount in dispute are less significant.

2  In addition, Plaintiff has not established that the comparators are similarly situated so the

3  importance of the evidence in resolving any issues is minimal.  Finally, as discussed in more

4  detail below, the burden on Defendant to collect and review the requested discovery from six

5  individuals over a one-year period is significant.  As a result, Plaintiff has not established that

6  the requested evidence is proportional to the needs of the case.[6]

7  　　　For the reasons set forth above, the Court finds that Plaintiff has not established that the

8  requested comparator discovery is relevant to the claims and defenses in this case and that it is

9  proportional to the needs of this case.

10  **B. <u>Undue Burden and Costs</u>**

11  　　　Defendant argues that compliance with the discovery requests would result in an undue

12  burden given the requests are disproportional to the needs of the case under Rule 26(b).  MTC

13  Oppo. at 9-11.  The Court agrees.  As discussed above, discovery of the identified emails likely

14  have little, if any, relevance and are not proportional to Plaintiff's claims for disability

15  discrimination, retaliation, and wrongful termination.  <u>See</u> ECF No. 1; <u>see also</u> MTC at 1.

16  　　　A responding party must demonstrate that the discovery sought would be unduly

17  burdensome to produce.  <u>Shaw v. Experian Info. Sols, Inc.</u> 306 F.R.D. 293, 301 (S.D. Cal. 2015).

18  To satisfy this burden, the responding party must provide sufficient detail regarding the time,

19  money, and procedures required to produce the requested documents.  <u>Id.</u>  Unsupported,

20  conclusory statements regarding expense and burden are not sufficient to illustrate why

21  requested discovery is not proportional.  <u>Gold v. Kaplan</u>, No.2:21cv03204-FLA-JDE, 2021 WL

22  6618643, at *5 (C.D. Cal. Dec. 2, 2021) (citing <u>Sung Gon Kang v. Credit Bureau Connection,</u>

23  <u>Inc.</u>, 2020 WL 1689708, at *5 (E.D. Cal. Apr. 7, 2020).  As explained by the Advisory Committee's

24  notes to the 2015 amendments to Fed. R. Civ. P. 26(b), "[a] party claiming undue burden or

25  _____

26  [6] The Court also notes that there are significant privilege issues related to Plaintiff's requested

27  comparator evidence.  <u>See</u> MTC Oppo. at 12; MTC at 15.  While the Court finds that it need not
resolve this issue at this time, the privacy concerns impact the proportionality analysis and the

28  undue burden argument.

expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." Fed. R. Civ. P. 26(b) advisory committee's notes (2015 amendment); see also Lofton v. Verizon Wireless (VAW) LLC, 308 F.R.D. 276, 281 (N.D. Cal. 2015) ("the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence.").

Here, Defendant argues that discovery of emails over a twelve-month span would "require the County to invest numerous hours to search for potentially responsive documents, additional hours to evaluate each document's responsiveness, more hours to identify private or privileged information or any other protected basis for withholding production, and additional hours to redact such private and privileged information." MTC Oppo. at 10; Klekowski Decl. at 6. Further, Defendant states it would be required to "review six separate email databases[,]" which would "far outweigh the established likelihood that discovery would lead to anything relevant to plaintiff's claims." MTC Oppo. at 10-11. While it has not yet determined the precise number of responsive emails, Defendant estimates that "there are tens of thousands of documents" "sent, forwarded, cc'd, and bcc'd to non-County email addresses" by the identified comparators during the relevant time period. Klekowski Decl. at 6.

Plaintiff attempts to argue that his requests are not a harassing fishing expedition by alleging that "he has firsthand knowledge that some of the target individuals engaged in conduct similar to the conduct the County seeks to use as justification for its decision to terminate Dr. Yphantides' employment." MTC at 11. Plaintiff then outlines alleged conduct by the comparators that is neither related to nor at issue in this case. See id. at 10-11; see also Yphantides Decl. at 56-57. As discussed in more detail above, Plaintiff has not established the relevance of his requested comparator evidence so the request appears to be an improper fishing expedition, based solely on Plaintiff's speculation about what others may or may not have done. See Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'").

Requiring Defendant to scour through potentially tens of thousands of emails based merely on Plaintiff's unsupported allegations that other individuals forwarded emails

improperly—when that activity is not a basis of his termination—constitutes an undue burden. See Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.); see also Fed. R. Civ. P. 26(b)(2)(C)(iii) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by the rules or by local rule if it determines that [] the proposed discovery is outside the scope permitted by Rule 26(b)(1)."). Cf. Soundview Innovations, LLC v. Hulu, LLC, 2018 WL 6164271, at *3 (C.D. Cal. June 12, 2018) (finding requests proportional to the needs for the case as they were limited to documents dating between a period of six years, relevant to plaintiff's claims, and defendant failed to provide any specific information to demonstrate how responding to the requests would cause undue burden).

Therefore, even if Plaintiff's requests were relevant and proportional to the needs of the case, Plaintiff fails to provide good cause to compel production given the undue burden it would impose on Defendant.  See Fed. R. Civ. P. 26 (b)(2)(B) ("the court may nonetheless order discovery [after the requesting party demonstrates undue burden or cost] if the requesting party shows good cause").

Based on the foregoing, Plaintiff's motion to compel further responses to RFP Nos. 51 through 56 is **DENIED**.

## C. <u>Sanctions</u>

If a motion to compel discovery is denied, Federal Rule of Civil Procedure 37(a)(5)(B) indicates that a court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorneys' fees."  However, a court cannot require such "payment if the motion was substantially justified or other circumstances make an award of expense unjust." Fed. Civ. R. Civ. P. 37(a)(5)(B).  "Discovery conduct is substantially justified if it is a response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." Izzo v. Wal-Mart Stores, Inc., 2016 WL 409694, at *7 (D. Nev. Feb. 2, 2016) (citing Pierce v. Underwood, 487 U.S. 552, 565

(1998)).

Defendant seeks sanctions in the amount of $10,000.00. MTC Oppo. at 12. In support of its request, Defendant argues "Plaintiff brought this motion without establishing relevance" and "failed to cite a single authority that would grant an order compelling production." Id. at 13. Defendant contends Plaintiff admits the original requests are overbroad but proceeded to file his motion without narrowing the scope of the requests. Id.

While the Court denied Plaintiff's motion to compel discovery, finding that Plaintiff failed to establish the relevance and proportionality of his requests and failed to narrow the scope of the requested discovery, the Court finds that a reasonable attorney could believe that some type of comparator evidence could be relevant and proportional in this case. As a result, Defendant's request for sanctions against Plaintiff is **DENIED**.

## II.    Privilege Log

Plaintiff's second motion challenges the adequacy of the privilege log provided by Defendant as to six emails. Letter Brief at 1-2. As to all six emails, Defendant provides the following explanation for its assertion of privilege:

> All of the redactions made in the documents produced on June 3, 2022, consisted of communications between co-counsel (members of the Office of County Counsel and members of Paul, Plevin, Sullivan & Connaughton), originating after the lawsuit was initiated; or communications between Nick Macchione and members of the Office of County Counsel, again originating after the lawsuit was filed. All such communications are protected by the attorney work product doctrine and the communications between outside counsel and Office of The County Counsel, as well as the communications between Mr. Macchione and County Counsel, are protective by attorney-client privilege.
> The following documents were redacted and produced on June 3, 2022:
> - CSD 001840-001841
> - CSD 001842-001848
> - CSD 001849-001851
> - CSD 001852-001853
> - CSD 001854-001860
> - CSD 001864-001868

Letter Brief at 35.

Plaintiff argues that the Federal Rules of Civil Procedure require Defendant to provide a

"traditional" privilege log, identifying (1) the date of the email; (2) the recipient(s) of the emails; (3) the sender(s) of the emails; (4) the subject line of the emails; and (5) a general description of the redacted emails.  Id. at 3, 4.  Plaintiff asserts that he is "merely seek[ing] a privilege log that provides his counsel with sufficient factual indicia to adequately discern whether [Defendant's] privilege assertion is justified."  Id. at 4.  Plaintiff concedes that Federal Rule of Civil Procedure 26(b)(5) does not mandate an itemized privilege log but argues that the Advisory Committee Notes indicate the additional information may be appropriate.  See id. at 5.

Defendant responds that Plaintiff's request "is both unnecessary and an invasion of the attorney client privilege and work product rule[,]" as the provided privilege log is sufficient and includes the requisite information to assess whether the asserted privilege applies.  Letter Oppo at 1, 2, 4.  Specifically, the privilege log includes "the persons who sent or received the redacted portions and the timeframe those communications were sent."  Id. at 3.  Defendant argues that Plaintiff's request to provide further itemized information for each redaction is improper, inconsistent with Rule 26(b)(5) and case law, and would require Defendant to provide privileged information such as which attorney talked to which client or co-counsel and when.  Id. at 2, 3-4.

Relevant here, Federal Rule of Civil Procedure 26(b)(5) requires that a party asserting privilege "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Rule 26(b)(5), however, does not mandate that a party claiming privilege follow any particular format when it produces a privilege log.  See generally, Fed. R. Civ. P. 26(b)(5); see also In re Imperial Corp. of Am., 174 F.R.D. 475, 477 (S.D. Cal. 1997) ("no where in Fed. R. Civ. Pro. 26(b)(5) is it mandated that a document-by-document privilege log is required, if a party seeks to withhold documents based on privilege or work product").  In fact, the Advisory Committee Notes explicitly state that "[t]he rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection."  Fed. R. Civ. P. 26(b)(5) advisory committee's notes to 1993 amendment.  Moreover, courts maintain discretion as to what

information is appropriate to assess privilege.  See id.; see also In re Imperial Corp. of Am., 174 F.R.D. at 477-78 (citing SEC v. Thrasher, No. 92 CIV.6987(JFK), 1996 WL 125661, at *1 (S.D.N.Y. 1996)).

Both parties cite to In re Imperial Corp. of Am., 174 F.R.D. 475, to support their position. Letter Brief at 4; Letter Oppo at 2. In that case, the court held that the party asserting privilege did not need to produce a document-by-document privilege log (i.e., a traditional log) but could instead provide a privilege log on a categorical basis.  Id. at 479.  The court reasoned that a traditional log was only one of numerous ways to sufficiently establish privilege and such format "is not rigid and inflexible"; instead, "[j]ust as in other areas of law, cases and the rules themselves recognize that there are circumstances in which other solutions or approaches are also appropriate."  Id. at 478.  In reaching its decision, the court relied on Thrasher where the court reasoned that it may be appropriate to provide categorial summaries or limit disclosure where "the additional information to be gleaned from a more detailed log would be of no material benefit to the discovery party in assessing whether the privilege claim is well grounded."  Id. (citing Thrasher, 1996 WL 125661, at *1).

Here, Defendant's privilege log provides all of the information necessary to evaluate the validity of the asserted privileges as it includes the Bates numbers of the privileged documents, the time period for the communication (after the initiation of the instant litigation), the persons (by job description or name) who sent or received the emails, and the fact that the emails are a communication between co-counsel or client and counsel.  See In re Imperial Corp. of Am., 174 F.R.D at 479 (requiring a privilege log that listed the affected documents and an affidavit representing that the documents were prepared in anticipation of litigation or were attorney-client communications intended to be confidential). Plaintiff's unsupported speculation regarding potential improprieties does not provide a basis to require Defendant to provide the requested information, including which attorney talked to which client/attorney on what date. That information is privileged.  In addition, Plaintiff fails to identify any case that supports his position that a more-detailed privilege log is required for post-litigation emails between counsel and client and co-counsel.  In contrast, Defendant provides numerous cases supporting its position.  Letter

Oppo at 2-3.

Plaintiff's motion to compel Defendant to amend or supplement its privilege log is **DENIED**.

## **CONCLUSION**

Plaintiff's motion to compel further responses to requests for production of documents [ECF No. 30] and motion to require Defendant to amend or supplement its privilege log [ECF No. 35] are **DENIED**.  Defendant's request for sanctions also is **DENIED**.

**IT IS SO ORDERED**.

Dated:  8/15/2022

Hon. Barbara L. Major
United States Magistrate Judge

21cv1575-GPC(BLM)