UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS YPHANTIDES, an individual,<br><br>         Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, a public entity and DOES 1-10 inclusive,<br><br>         Defendant. | Case No.: 21cv1575-GPC(BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS IN LIMINE NOS. 1-6 AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION IN LIMINE NO. 2** |

  A motion in limine hearing was held on November 6, 2023. (Dkt. No. 106.) Gregory Klawitter and Aaron M. Olsen appeared on behalf of Plaintiff Dr. Nicholas Yphantides and George Howard, Corrie Klekowski, and Frances Rogers appeared on behalf of Defendant County of San Diego. After the hearing, both parties filed supplemental briefs on Defendant's motion in limine No. 4. (Dkt. Nos. 107, 108.) After reviewing the parties' briefs, supplemental briefs, supporting documents and hearing oral argument, the Court GRANTS in part and DENIES in part Defendant's motions in limine Nos. 1-6 and GRANTS in part and DENIES in part Plaintiff's motion in limine No. 2.

/ / /

/ / /

**Discussion**

**A.    Legal Standard on Motion in Limine**

A party may use a motion in limine ("MIL") to exclude inadmissible or prejudicial evidence prior to trial. *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce*, 469 U.S. at 4 n.4; *see also City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (motions in limine "are useful tools to resolve issues which would otherwise clutter up the trial") (citation omitted). "[A] ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court. The district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *City of Pomona*, 866 F.3d at 1070 (quoting *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999)).

**B.    Defendant's MIL No. 1 to Preclude Evidence about County's Response to 2017 Hepatitis A Outbreak**

Defendant seeks to exclude any reference, evidence, testimony or comment by counsel or witnesses concerning the County's response to the outbreak of Hepatitis A ("HepA") in 2017, the County Grand Jury investigation of the outbreak or other proceedings regarding the County's response as irrelevant and meant to impugn the competency of the County. (Dkt. No. 87.) County also argues that the evidence should be excluded under Rule 403 as the evidence is prejudicial, will cause confusion of the issues and will cause undue delay by requiring the County to engage in rebutting Plaintiff's evidence. (*Id.*) Plaintiff responds that the County misunderstands the purpose and relevance of the evidence. (Dkt. No. 95.) As Chief Medical Officer ("CMO"), Plaintiff's job performance during and after the HepA outbreak, the county's response, the Grand Jury recommendations and the state audit are relevant to fully explain his state of mind, (stress,

anxiety), judgments, opinions and policies in responding to COVID-19 which are the reasons he was terminated. (*Id.*) In responding to COVID-19, Plaintiff was afraid the County would repeat the same mistakes of not responding fast enough as it had done in responding to HepA. (*Id.*) The evidence is also relevant to show County's reason for terminating him based on "poor judgment" is not credible. (*Id.*) Finally, his ability to perform his essential job duties despite his mental disability during HepA outbreak is probative of his ability to perform those same duties during COVID-19. (*Id.*)

The Court DENIES Defendant's MIL No. 1 as Plaintiff's prior experience as CMO during the HepA outbreak in 2017 is relevant to understanding or explaining, in part, how Plaintiff's mental disability evolved at the time COVID-19 pandemic began. However, any extrinsic evidence such as the County Grand Jury investigation and report of May 2018 and the California State audit in December 2018 are inadmissible as it would cause delay on issues not relevant, would be prejudicial and confuse the issues. Instead, Plaintiff will be permitted to testify as to where he was at mentally and emotionally during the HepA outbreak, whether the HepA experience contributed to his mental condition and whether that experience was a contributing factor to his mental state during his handling of COVID-19.

**C.    Defendant's MIL No. 2 and Plaintiff's MIL No. 2 Re: Attorney/Client Privilege**

Defendant County of San Diego moves to preclude any comment, suggestion or reference to its assertion of the attorney-client privilege and the content as to any privileged communication discussing Plaintiff's termination between its executives, Dean Arabatzis, the Acting Director of the County Health and Human Services Agency ("HHSA"), Helen Robbins-Meyer, Brazeau, Chief Administrative Officer for the County, Nick Macchione[1], former Director of the County HHSA, and County Counsel, Bill Songer, during meetings

---

[1] Mr. Macchione only attended the first March 2021 meeting.

in December 2020 and January 2021 and in particular a meeting in March 2021 several days before Plaintiff was terminated on March 22, 2021. (Dkt. No. 88.) It contends that the jury could be left with the impression that the executives' refusal to answer based on the privilege is an improper effort to conceal or suppress evidence. (*Id.*)

Similarly, Plaintiff seeks to exclude evidence, testimony and arguments concerning matters discussed in two March 2021 meetings where the County invoked the attorney-client privilege, including any findings. (Dkt. No. 85.) Plaintiff's MIL further seeks to exclude ALL matters, even if discovered or disclosed outside the March 2021 meetings, that were discussed at these meetings with County Counsel. (*Id.*) Plaintiff also moves to bar any testimony or evidence about the occurrence of these privileged meetings as it would suggest to the jury that the County's decision to terminate Plaintiff was measured, thorough and fair because top officials consulted with County Counsel.[2]

Contrary to the parties' assertion, federal common law applies to the attorney-client privilege in this federal question case. *See* Fed. R. Evid. 501; *Stein v. Tri-City Healthcare Dist.*, No. 12cv2524 BTM (BGS), 2013 WL 2417772 at *2 (S.D. Cal. June 3, 2013) ("While ordinarily true, in cases where federal privilege law governs the claim over which the Court has original subject matter jurisdiction, federal privilege law also applies to supplemental state claims as well.") (citing *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n. 10 (9th Cir. 1992)); *Crowe v. Cnty. of San Diego*, 242 F. Supp. 2d 740, 750 (S.D. Cal. 2003); *see also Roberts v. Heim*, 123 F.R.D. 614, 620-21 (N.D. Cal. 1988) (reviewing cases holding federal common law of privileges governs all privilege issues in federal question case with pendent state law claims)). California has a more "liberal view" of the privilege that conflicts with the "strict view applied under federal law." *United States v. Ruehle*, 583 F.3d 600, 608-09 (9th Cir. 2009).

---

[2] Plaintiff also seeks to preclude evidence that these privileged meetings occurred because the meetings could show that his termination stemmed from the "advice of counsel." (Dkt. No. 85.) However, the County has asserted it is not relying on advice of counsel as an affirmative defense.
4

The attorney-client privilege only protects "disclosure of communications", and does not extend to "disclosure of the underlying facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). "A fact is one thing and a communication concerning that fact is an entirely different thing." *Id.* at 395-96 (citation omitted). Further, a party may not use the attorney-client privilege as both a shield and a sword. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (concerning advice of counsel defense).

First, the Court GRANTS Defendant's MIL No. 2 as unopposed. The parties have already jointly stipulated that "Neither party will comment, elicit testimony, present evidence, and /or present argument regarding the other party's *assertion* of the attorney/client privilege." (Dkt. No. 105.) Moreover, the *contents* of what was discussed at those privileged meetings with County Counsel and in which Plaintiff was denied discovery must also be excluded  *See Morris v. Long*, No. 1:08–cv–01422–AWI–MJS, 2012 WL 1498889, at *5 (E.D. Cal. Apr. 27, 2012) (any evidence not disclosed in discovery due to the invocation of a privilege cannot be introduced at trial) (citing *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 416 (D. Del. 1992) ("successful assertion of the attorney-client privilege for a particular document will foreclose it from introducing the contents of the privileged document at trial")).

As to Plaintiff's MIL No. 2, the Court DENIES Plaintiff's MIL No. 2 as overbroad as he seeks a broader ban to exclude ALL evidence of ANY matters discussed at the privileged meetings, including facts discovered during depositions and written discovery, as to reasons for Plaintiff's termination outside the privileged meetings. Plaintiff improperly seek to exclude non-privileged "facts" as opposed to privileged "communications." *See Upjohn*, 449 U.S. at 395-96. To the extent that the reasons for Plaintiff's termination were learned prior to the meeting with County Counsel, those reasons are admissible. To the extent the reasons for Plaintiff's termination was learned at the meeting with County Counsel and disclosed after those meetings, those reasons are inadmissible. Further, County Counsel's mere reading of Dr. Printz letter to one of the

1  top executives involved in the termination, over a phone call, does not involved
2  privileged communications and is admissible.
3        However, the Court GRANTS Plaintiff's MIL No. 2 to preclude evidence that the
4  meetings occurred with County Counsel to discuss Plaintiff's termination. *See Rodriguez*
5  *v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1018 (N.D. Cal. 2022) (privilege applies
6  to questions revealing the specific nature of the legal advice received). At the hearing,
7  the County proposed to offer testimony that top leaders collaborated and met to discuss
8  Plaintiff's termination without mentioning that County Counsel attended the meetings. In
9  response, Plaintiff objected because he would not be able to cross-examine and ask
10 questions about these meetings as to who attended the meeting and what was discussed.
11 The Court agrees with Plaintiff and precludes the County from referencing the meetings
12 in which County Counsel attended because Plaintiff would not be to conduct meaningful
13 cross-examination of the witness without eliciting that County Counsel attended these
14 meetings and revealing privileged communications. However, the County is not
15 precluded from referencing meetings with top executives that discussed Plaintiff's
16 termination that did not involve County Counsel.

**D.  Defendant's MIL No. 3 to Preclude Trial Testimony from Nathan Fletcher**

18       Defendant seeks to preclude the testimony from former County Board of
19 Supervisor Nathan Fletcher as irrelevant since he was not involved in the decision to
20 terminate Plaintiff nor consulted in that decision. (Dkt. No. 89.) Moreover, his recent
21 resignation, on May 15, 2023, from the Board of Supervisors due to alleged misconduct
22 as an MTS Board Member is not relevant and would be prejudicial if the jurors had a
23 negative opinion of Mr. Fletcher for his conduct while an MTS board member. (*Id.*)
24 Finally, the County argues his testimony is barred by the apex doctrine. (*Id.*)
25       Plaintiff disagrees arguing that his testimony is relevant because it was the County
26 that identified Nathan Fletcher in response to Plaintiff's Special Interrogatory Nos. 3 & 4
27 which asked, "identify . . . all persons who complained about or reported any conduct by
28 PLAINTIFF that in any way contributed to YOUR decision to terminate PLAINTIFF's

employment" and "identify . . . all persons who you communicated with or interviewed pertaining to any statement(s) and/or conduct by PLAINTIFF that in any way contributed to YOUR decision to terminate PLAINTIFF's employment." (Dkt. No. 97-2, Olsen Decl., Ex 1 at 5-6.[3]) Plaintiff contends that Mr. Fletcher has personal knowledge about the alleged conduct he personally observed and reported that allegedly caused the County to terminate Plaintiff's employment. Plaintiff asserts he is agreeable to limiting Mr. Fletcher's testimony to topics set forth in Special Interrogatory Nos. 3 and 4.

District courts have recognized that "apex" depositions or depositions of high-level executives create "a tremendous potential for abuse or harassment"; therefore, district courts have discretion to limit these depositions under Federal Rule of Civil Procedure 26(c). *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (2012). "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.* However, "a party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied" and therefore, it is very unusual "for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *Id.*

Further, contrary to Plaintiff's argument, the apex doctrine has been applied to preclude testimony at trial. *See Pinn, Inc. v. Apple Inc.,* Case No. SA 19-CV-01805-DOC-JDE, 2021 WL 4775969, at *3 (C.D. Cal. Sept. 10, 2021) ("the 'apex doctrine' is usually applied to depositions but can also be applied to protect a senior executive from being compelled to appear at trial.") (citing *Reddy v. Nuance Commc'ns, Inc.*, No. 5:11-CV-05632-PSG, 2015 WL 4648008, at *4 & n.38 (N.D. Cal. Aug. 5, 2015) (granting motion in limine to preclude CEO as a trial witness, noting the witness's lack of apparent

---

[3] Page numbers are based on the CM/ECF pagination.

knowledge regarding the case as well as absence of any effort to depose the witness)); *see also Benson v. City of Lincoln,* Civil No. 13-1758 (NLH/AMD), 2023 WL 5637091, at *5-6 (D. Neb. Aug. 31, 2023) ("The Court is persuaded that the 'apex doctrine' is applicable to trial testimony for the same reasons it is applicable to deposition testimony" relying on *Pinn*); *Blue Gentian v. Tristar Prods., Inc.*, Civil No. 13-1758 (NLH/AMD), 2019 WL 13165269, at *2 (D.N.J. Jan. 18, 2019) (the "apex doctrine does . . . apply a rebuttable presumption that a high-level official's [trial testimony] represents a significant burden . . . and that this burden is undue."). In *Pinn*, the district court conducted a detailed analysis under the apex doctrine and precluded the senior executive from testifying at trial.[4] 2021 WL 4775969, at *3. The *Pinn* court found that nothing in the case suggested that the executive had any "unique first-hand, non-repetitive knowledge" because the plaintiff had not sought to depose the executive. *See id.*

Plaintiff proposes to examine Mr. Flectcher about topics set forth in Special Interrogatory Nos. 3 and 4 which are extremely general interrogatories asking Defendant to identify a broad range of individuals, including "all persons who you communicated with or interviewed pertaining to any statement(s) and/or conduct by PLAINTIFF that in any way contributed to YOUR decision to terminate PLAINTIFF's employment." As in *Pinn*, Plaintiff has failed to show Mr. Fletcher has "unique first-hand, non-repetitive knowledge" and has failed to describe with any particularity what Fletcher would testify to. Because Plaintiff did not depose Mr. Fletcher, he has not shown nor has he articulated whether he has exhausted other less intrusive discovery methods. *See id.*

Next, Plaintiff contends that the apex doctrine should not be applied given that Mr. Fletcher no longer works with the County. However, the apex doctrine has been applied to depositions of former high-ranking officials. *See Thomas v. Cate*, 715 F. Supp. 2d

---

[4] In *Pinn*, Apple sought to exclude its Senior Vice President from testifying at trial under Rule 45 and the apex doctrine but the court precluded his testimony under the apex doctrine. *Pinn*, 2021 WL 4775969, at *2.

1012, 1049 (E.D. Cal. 2010) ("The general rule prohibiting depositions of high-ranking government officials applies to former high-ranking officials") (citing *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 316-17 (D.N.J. 2009)).

Finally, given the minimal probative value of Mr. Fletcher's testimony and the fact that he resigned recently due to alleged misconduct, the Court finds that any probative value of the testimony of Mr. Fletcher is outweighed by the likelihood of confusing the issues and undue prejudice. Therefore, the Court GRANTS Defendant's MIL No. 3 as barred by the apex deposition doctrine and Federal Rule of Evidence 403.

E. **Defendant's MIL No. 4 to Exclude Expert Report of Michael Robbins**

Defendant's MIL No. 4 seeks to exclude the opinion and expert report of Michael Robbins, Plaintiff's "human resources" expert, because 1) his opinions are not reliable because it has no underlying bases; 2) his opinions invade the province of the Court by defining legal standards reserved for the Court; 3) his opinions invade the province of the jury with his ultimate conclusions that the County did not provide reasonable accommodations and did not engage in the interactive process; 4) his opinions as to the County's failure to "conduct an investigation" and failure to treat him "fairly despite the County's commitment to fair treatment of its employees" are not at issue in the case; and 5) his opinions are common knowledge and no expert testimony is needed. (Dkt. No. 90.)

Plaintiff responds that Mr. Robbins' expert testimony regarding reasonable accommodations/interactive process and adequacy of workplace investigations are relevant and permissible. (Dkt. No. 98.) Mr. Robbins will testify "whether the County followed standard practices and its own policies and procedures to engage in a proper reasonable accommodation process with Dr. Yphantides; and . . . investigating allegations of policy violations which purportedly led to Plaintiff's termination." (*Id.*) Plaintiff maintains that Mr. Robbins' testimony will educate the jury on the County's standards for reasonable accommodations, the interactive process and workplace investigations that is not common knowledge. (*Id.*)

Federal Rule of Evidence 702 requires that the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. Expert testimony is appropriate in cases where the average juror would have no basis for evaluating the type of evidence presented in the case without the assistance of an expert. *Gonzalez v. Valenzuela*, No. CV 00–9892 ABC MANX, 2001 WL 36387147, at *1 (C.D. Cal. Nov. 26, 2001) (citing *United States v. Morales*, 108 F.3d 1031, 1039 (9th Cir. 1997)). Expert testimony is not helpful to a jury when it addresses an issue that is within "the common knowledge of the average layman." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001); *see also United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002). Further, expert testimony under Rule 702 must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

First, as to relevance, Plaintiff, in the supplemental brief, argues that the adequacy of the County's investigation based on its own policies into his misconduct is relevant because it demonstrates the County's reasons for terminating him were not genuine but pretexual. (Dkt. No. 107.) He explains that if the County's stated reasons that Plaintiff was terminated due to violations of the Ethics Code, its own policies required a full, fair and thorough investigation to discover if the claims were truthful before terminating him. (*Id.*) The County responds that the inadequacy of a workplace investigation is relevant only when the employee denies he is engaging in the alleged misconduct. (Dkt. No. 108.) However, in this case, because Plaintiff admitted to the misconduct, the County's reasonable belief whether the misconduct occurred is not at issue. (*Id.*)

The *McDonnell Douglas*[5] burden-shifting framework when analyzing disparate treatment claims applies to FEHA discrimination claims. *See Guz v. Bechtel Nat'l Inc.,* 24 Cal. 4th 317, 354 (2000). Once Plaintiff bears the initial burden of establishing a prima facie case of discrimination, the County must provide a legitimate nondiscriminatory

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

reason for terminating Plaintiff. *Id.* If the County meets its burden, Plaintiff must produce "substantial evidence" that the County's proffered reasons for terminating him are untrue or pretextual or that the employer acted with discriminatory animus "such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action." *Price v. Victor Valley Union H.S. Dist.*, 85 Cal. App. 5th 231, 239, 244 (2022).

To show pretext, a plaintiff must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Regents of Univ. of Cal.,* 88 Cal. App. 4th 52, 75 (2000) (internal citations and quotation marks omitted); *see Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 224 (1999) (pretext may be demonstrated by showing "'the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge.'") (citation omitted). Further, where "the proffered reason for termination intertwines with the employee's disability", consistencies or weaknesses and conflicting evidence become more significant. *Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal. App. 5th 570, 595-96 (2016) (conflicting evidence demonstrating pretext where a fact finder could reasonably infer at least some of misconduct was due to employee's medical appointments, and therefore, she was improperly terminated, at least in part, as a direct result of protected activity) (citing *Humphrey v. Mem'l Hosps. Ass'n.*, 239 F.3d 1128, 1139-40 (9th Cir. 2001) (employee terminated for "absenteeism and tardiness" created "triable issue of fact as to whether her attendance problems were caused by" her disability and therefore "jury could reasonably find the requisite causal link between [the disability] and [plaintiff's] absenteeism and conclude that [the defendant] fired Humphrey because of her disability"].)).

Here, Plaintiff was terminated based on the following conduct that allegedly breached the County's Code of Ethics: (1) he pressured Dr. Foster to help his friend, who was not yet eligible, obtain a vaccine appointment; (2) he engaged in inappropriate text

communications with third-party Mayor Rebecca Jones on March 7, 2021; and (3) his inappropriate communications with his subordinate, Jessica Gall, that made her feel "uncomfortable." (Dkt. No. 64 at 14.) To the extent that the County has a policy to investigate reports of violence, threats of violence or sexual harassment, and failed to do so prior to Plaintiff's termination, Plaintiff has provided expert opinion evidence that questions whether he was truly terminated due to breaches of the Code of Ethics. Thus, in this case, the County's failure to conduct an adequate investigation is relevant to whether its reasons for terminating Plaintiff were pretextual. *See Nazir v. United Airlines, Inc*., 178 Cal. App. 4th 243, 280 (2009) ("An employer's failure to interview witnesses for potentially exculpatory information evidences pretext."); *Mendoza v. W. Med. Ctr. Santa Ana*, 222 Cal. App. 4th 1334, 1344-45 (2014) (relying on expert testimony to conclude that the "lack of a rigorous investigation by defendants is evidence suggesting that defendants did not value the discovery of the truth so much as a way to clean up the mess that was uncovered when Mendoza made his complaint."); *Silva v. Lucky Stores, Inc*., 65 Cal. App. 4th 256, 263 (1998) (noting the plaintiff failed to provide an expert addressing "the objective reasonableness of Lucky's factual determination of misconduct or whether Lucky conducted an appropriate investigation under the circumstances."); *see e.g., Morgan*, 88 Cal. App. 4th at 77 ("an employer's violation of its own hiring policies may constitute circumstantial evidence of discrimination" or an inference of discrimination).

The County argues that the adequacy of an investigation was unnecessary because Plaintiff admitted to the three acts that served as the bases for his termination. However, the County has not provided evidence that Plaintiff admitted to these acts prior to his termination such that an investigation would have been deemed unnecessary. It appears that Plaintiff admitted these acts at his deposition during the pending litigation. Moreover, to the extent the County claims that his conduct was undeniable because the inappropriate messages were written on Facebook and in text messages, there were also communications through phone calls with Ms. Foster, Ms. Gall and Mayor Jones. (*See* Dkt. No. 64 at 9, 11, 12.) Therefore, whether the County reasonably believed Plaintiff engaged in misconduct

without an adequate investigation prior to termination is open to disagreement. The Court finds that Mr. Robbins' expert opinions whether the County's failure to comply with its own policies in conducting workplace investigations are relevant to whether the County's reasons for terminating Plaintiff were pretextual.

Next, Mr. Robbins' opinions on industry standards and the County's own practices are reliable given his over 25 years as a principal at his company doing expert testimony, training and investigation in the employment area. Further, his opinions are reliable because they are based on reviewing the County's policies and practices, deposition testimony from County witnesses about its policies and practices, as well as relying on federal government guidance on workplace investigations, guides by California's Department of Fair Employment & Housing ("DFEH"), Association of Workplace Investigators ("AWI") standards, and federal and state guidance on the interactive process. (Dkt. No. 98-2, Robbins Decl. ¶¶ 50, 51; Dkt. No. 52-17, Robbins Report at 8-15.) Moreover, these standards are not common knowledge known by the average layperson, and expert testimony will assist the jury. *See Oyarzo v. Tuolumne Fire Dist.*, No. 1:11–cv–01271–SAB, 2013 WL 5718882, at *14-15 (E.D. Cal. Oct. 18, 2013) (denying motion to exclude human resources expert because expert will assist the jury in determining whether defendant acted within the acceptable human resource standard for purposes of whether defendants' actions were pretextual); *see Sitter v. Ascent Healthcare Solutions, Inc.,* No. C09–5682 EMC, 2011 WL 2682976, at *1 (N.D. Cal. July 8, 2011) (numerous courts have permitted extensive testimony by human resources experts); *Wood v. Mont. Dept. of Revenue*, CV 10–13–H–DWM, 2011 WL 4348301, at *2 (D. Mont. Sept. 16, 2011) ("In particular, courts commonly permit human resources experts to testify on human resources management policies and practices and whether an employer deviated from those policies and practices."); *EEOC v. Sierra Pac. Indus.*, No. 2:08–cv–01470–MCE–DAD, 2010 WL 3941416, at *1 (E.D. Cal. Oct. 5, 2010) (denying motion to exclude testimony of HR expert because testimony "whether Defendant's management acted within the

appropriate standard of care . . . may well assist the jury in reaching the ultimate conclusion in this matter: whether or not Defendant is liable for any discrimination . . .").

Further, the parties do not disagree that "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life Ins.*, 373 F.3d 998, 1016 (9th Cir. 2004) (expert conclusion that the defendants failed to comport with industry standards did not reach legal conclusions on the issue of bad faith). Federal Rule of Evidence 704 provides, "[a]n opinion is not objectionable because it embraces an ultimate issue." Fed. R. Evid. 704. An expert may refer to the applicable law, but he may not offer an opinion on legal conclusions or an opinion on ultimate issues of law. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008); *Hangarter*, 373 F.3d at 1016 ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on the ultimate issue of law.").

Here, Mr. Robbins' expert report uses legal terminology in expressing his opinions which the County objects as improper. However, experts are allowed "to refer to terminology from applicable law in expressing their opinions." *See Nationwide Transport Finance*, 523 F.3d at 1059 (citing *Hangarter,* 373 F.3d at 1017) ("[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."), *Peckham v. Cont'l Cas. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (district court did not abuse its discretion in admitting challenged expert testimony on causation in insurance law noting that "[i]nsurance is a complicated subject and the industry, over time, has developed a patina of custom and usage."), and *First Nat'l State Bank of N.J. v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981)). Mr. Robbins' opinions are within the bounds of Rule 704 and he has not expressed an opinion on an ultimate issue of law nor provided the law to be applied.

Next, the County objects to Mr. Robbins' statement that the County failed to treat Plaintiff "fairly despite the County's commitment to fair treatment of its employees," (Dkt. No. 52-17, Robbins' Expert Report. at 2), because "fair" is not relevant to the issues in this

case. Mr. Robbins' comments about "fairness" was in response to Ms. Evers and Ms. Brazeau's comments that the County tries to treat employees "fairly." (*Id.* at 15, 16.) To the extent that he is responding to the County's reference to "fairness", the Court DENIES Defendant's MIL. As discussed in Defendant's MIL No. 5, Plaintiff agrees he will not ask about "fairness" regarding ultimate issues in the case, will not raise "fairness" in argument, including during opening and closing statements. Defendant may raise any objections to the use of "fairness" during the trial.

Lastly, Plaintiff's opposition on timeliness of a *Daubert* motion is without merit. The scheduling order provides that "all other pretrial motions, including those addressing Daubert issues related to dispositive motions must be filed by December 9, 2022." (Dkt. No. 12 at 3.) Because the parties did not rely on any experts on summary judgment, the *Daubert* motion did not need to be raised at that time. In conclusion, the Court DENIES Defendant's MIL No. 4.

**F.    Defendant's MIL No. 5 to Preclude Comments on Whether the County's Conduct in Terminating Plaintiff was "Fair"**

Defendant moves to preclude argument, comment or questioning of witnesses regarding whether the County's conduct in terminating Plaintiff was "fair" as irrelevant, improper, and prejudicial. (Dkt. No. 91.) It argues it is not relevant because "fairness" is not an element of any cause of action and allowing comments or questions about whether the County's conduct was "fair" may allow a juror to erroneously rely on fairness rather than the elements of a claim. (*Id.*) Also, the County contends that the use of "fair" would invite the jury to decide the case on an amorphous concept rather than the law and will likely confuse or mislead the jury. (*Id.*) Plaintiff responds that the County's request is overly broad and premature. (Dkt. No. 99.) He agrees not to ask about "fairness" on the ultimate issues in the case but a wholesale preclusion of questions including "fairness" is overly broad and improper at this stage. (*Id.*)

The Court DENIES the MIL as overly broad and premature. Plaintiff agrees he will not ask about "fairness" on the ultimate issues in the case, will not raise "fairness" in

argument, including during opening and closing statements. Defendant may raise any objections to the use of "fairness" during the trial.

**G.    Defendant's MIL No. 6 to Exclude Comparator Evidence**

Defendant seeks to preclude the following improper "comparator", character and/or impeachment evidence[6]: 1) whether County Health Officer, Dr. Wilma Wooten, referred to the current Chief Medical Officer, Dr. Eric McDonald, as a "prick" and whether the County investigated or took responsive action for the alleged statement; 2) whether Dr. Sayone Thihalolipavan, the County's Public Health Medical Officer, who is not a witness in this action, had a romantic relationship with a coworker; 3) whether Mr. Macchione, the former Director of the County HHSA, was ever accused of having purportedly "pornographic" material on a County computer; 4) whether County policy required "progressive discipline" or "formal discipline" prior to Plaintiff's termination because it applied to classified employees, and not Plaintiff, an unclassified employee, (Dkt. No. 92-1, Att. 2 at 7); and 5) questions concerning former County Chief Nursing Officer Denise Foster's mental health history and that of her daughter. (Dkt. No. 92.)

The Court GRANTS Defendant's MIL as to Dr. Thilhalolipavan and Ms. Foster as unopposed. (*See* Dkt. No. 100.) Plaintiff agrees not to question Ms. Foster about her and her daughter's personal medical histories. Ms. Foster may testify as to her close friendship with Plaintiff as it is relevant to his job performance and his interactions with peers and subordinates and may also testify as to her professional experience with mental health issues.

Plaintiff further contends that comparator evidence of his peers, Dr. Wooten, the County's Public Health Officer, and Mr. Macchione, the former Director of the Health and Human Services Agency and Dr. Yphantides boss, are relevant because they are alleged to have committed similar breaches of the Code of Ethics that Plaintiff was terminated for, but they did not suffer termination, or any discipline.

---

[6] The Court DENIES the MIL for impeachment and character purposes as premature and the parties do not meaningfully raise arguments on these bases.


In the instant case, Plaintiff was terminated based on alleged breaches of the County's Code of Ethics. (Dkt. No. 64 at 14.) "A showing that the County treated similarly situated employees outside [Plaintiff's] protected class more favorably would be probative of pretext." *Vasquez v. Cnty. of Los Angeles,* 349 F.3d 634, 641 (9th Cir. 2003). Comparator evidence must be similarly situated when they "have similar jobs and display similar conduct." *Id.* The employees need not be identical, but must be similar in material respects. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010). "Materiality depends on context and is a question of fact that cannot be mechanically resolved." *Earl v. Nielsen Media Research*, *Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011) (citations and quotations omitted). In the Seventh Circuit, "[c]omparable seriousness may be shown by pointing to a violation of the same company rule, or to conduct of similar nature." *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 689 (7th Cir. 2007).

The Court DENIES the MIL as to Dr. Wooten, who was in a similar leadership position as Plaintiff and subject to the same Code of Ethics. Mr. McDonald testified Dr. Wooten called him a "prick", that the issue was investigated but he was not sure about the results of the investigation. (Dkt. No. 100-3, Olsen Decl., Ex. 2, McDonald Depo.)

Next, the Court GRANTS the MIL as to Mr. Macchione. While he was similarly situated in his position as Acting Director of the County HHSA, there is no evidence that Mr. Macchione had porn on his County computer or that there were allegations that he had porn on his County computer. The attached depositions to the MIL and opposition show that Mr. Macchione denied the accusation, (Dkt. No. 92-1, Att. 2, Macchione Depo. at 100:24-101:1), and Mr. Arabatzis testified he heard about rumors, then clarified that he heard that County leadership employees used their work computers to view pornography but he did not identify Mr. Macchione. (Dkt. No. 110-2, Olsen Decl., Ex. 1, Arabatzis Depo. at 221:12-19; 222:22-223:25.) Plaintiff has not supplied evidence that Mr. Macchione was even subject to an allegation of having pornography on his County computer. Thus, it cannot be a basis for comparator evidence.

Finally, Plaintiff responds that the "progressive discipline" evidence is relevant because Mr. Macchione testified that the "progressive discipline" applied to all employees. (*See* Dkt. No. 100-5, Ex, 4 at 3.) At the hearing, the County recited, for the first time, to the depositions of Ms. Brazeau, Ms. Evers, and Plaintiff as well as the County Charter demonstrating that Plaintiff was an unclassified or at-will employee and subject to termination for any reason. Because there is an issue of fact, the Court DENIES Defendant's MIL to exclude that the progressive discipline applied to Plaintiff as an unclassified employee. The County may present their counter evidence at trial for the jury's consideration. In conclusion, the Court GRANTS in part and DENIES in part Defendant's MIL No. 6.

## Conclusion

Based on the above, Court DENIES Defendant's MIL No. 1, GRANTS Defendant's MIL No. 2 as unopposed, GRANTS Defendant's MIL No. 3; and DENIES Defendant's MIL Nos. 4 and 5; and GRANTS in part and DENIES in part Defendant's MIL No. 6. The Court also GRANTS in part and DENIES in part Plaintiff's MIL No. 2.

IT IS SO ORDERED.

Dated:  November 14, 2023

Hon. Gonzalo P. Curiel
United States District Judge